1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 29, 2025

SEAN F. McAVOY, CLERK

4

5          UNITED STATES DISTRICT COURT

6         EASTERN DISTRICT OF WASHINGTON

7

8

| | |
|---|---|
| GRISELDA B.,<br><br>                              Plaintiff,<br><br>       v.<br><br>MICHELLE KING, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                              Defendant. | NO:  1:23-CV-03124-LRS<br><br><br>ORDER AFFIRMING THE<br>COMMISSIONER'S DECISION |

9

10

11

12

13

14          BEFORE THE COURT are the parties' briefs.  ECF Nos. 8, 10.  This matter

15 was submitted for consideration without oral argument.  Plaintiff is represented by

16 attorney D. James Tree.  Defendant is represented by Special Assistant United States

17 Attorney David Burdett.  The Court, having reviewed the administrative record and

18

19 [1] Michelle King became the Acting Commissioner of Social Security on January

20 20, 2025.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Michelle King is

21 substituted for Kilolo Kijikazi as the Defendant in this suit.

ORDER - 1

the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's

brief, ECF No. 8, is denied and Defendant's brief, ECF No. 10, is granted.

## JURISDICTION

Plaintiff Griselda B. (Plaintiff),[2] filed for supplemental security income (SSI)

on May 1, 2018, and alleged an onset date of June 18, 2017.  Tr. 141-46.  Benefits

were denied initially, Tr. 95-98, and upon reconsideration, Tr. 102-04.  Plaintiff

appeared at a hearing before an administrative law judge (ALJ) on June 11, 2020.

Tr. 39-57.  On October 27, 2020, the ALJ issued an unfavorable decision, Tr. 39-57,

and on April 22, 2021, the Appeals Council denied review.  Tr. 1-6.  Plaintiff

appealed to the U.S. District Court for the Eastern District of Washington, and on

April 11, 2022, the undersigned remanded the matter for additional proceedings.  Tr.

814-32.  After a second hearing on March 9, 2023, the ALJ issued another

unfavorable decision on June 6, 2023.  Tr. 719-46.  The matter is now before this

Court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

therefore only summarized here.

---

[2] The Court identifies a plaintiff in a Social Security case only by the first name and

last initial to protect privacy.  See Local Civil Rule 5.2(c).

ORDER - 2

Plaintiff was 30 years old at the time the application was filed.  Tr. 738.  She left school after seventh grade, but she completed a GED.  Tr. 158, 762.   She has work experience as an office assistant, produce sorter at a warehouse, and donation sorter at a warehouse.  Tr. 159, 175.  At the first hearing, Plaintiff testified that she injured her back, and that although it had gotten better, she still had pain.  Tr. 45-46.  She testified that she had experienced seizure-like convulsions.  Tr. 47-48.  She has asthma and migraines.  Tr. 49.  She has anxiety and paranoia and was diagnosed with bipolar disorder.  Tr. 49, 51.  She testified that she occasionally hallucinates.  Tr. 53.

At the second hearing, Plaintiff testified she was taking Topamax for migraines and still has two migraines per month which affect her for two days at a time.  Tr. 765.  She has been diagnosed with anxiety, depression, bipolar, and PTSD.  Tr. 766-67.  Sometimes she does not leave the house due to anxiety.  Tr. 767.  Her mental health symptoms go up and down.  Tr. 768.  She testified that her depression symptoms are related to her pain level.  Tr. 768.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or

1   mental impairment which can be expected to result in death or which has lasted or

2   can be expected to last for a continuous period of not less than twelve months."  42

3   U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such

4   severity that he is not only unable to do his previous work[,] but cannot, considering

5   his age, education, and work experience, engage in any other kind of substantial

6   gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

7          The Commissioner has established a five-step sequential analysis to determine

8   whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

9   At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §

10  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

11  Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

12         If the claimant is not engaged in substantial gainful activity, the analysis

13  proceeds to step two.  At this step, the Commissioner considers the severity of the

14  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

15  "any impairment or combination of impairments which significantly limits [his or

16  her] physical or mental ability to do basic work activities," the analysis proceeds to

17  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

18  this severity threshold, however, the Commissioner must find that the claimant is not

19  disabled.  20 C.F.R. § 416.920(c).

20         At step three, the Commissioner compares the claimant's impairment to

21  severe impairments recognized by the Commissioner to be so severe as to preclude a

person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).

If the impairment is as severe or more severe than one of the enumerated

impairments, the Commissioner must find the claimant disabled and award benefits.

20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must assess the

claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the

past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable

of performing past relevant work, the Commissioner must find that the claimant is

not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing

such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the

claimant's RFC, the claimant is capable of performing other work in the national

economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the

Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant

is capable of adjusting to other work, the Commissioner must find that the claimant

is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is

disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers

in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d

386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful

activity since May 1, 2018, the application date.  Tr. 724.  At step two, the ALJ

found that Plaintiff has the following severe impairments: degenerative disc disease

of the spine; mild asthma; insomnia; migraines/headaches; pseudo-

seizures/conversion disorder with seizures; morbid obesity; major depressive

disorder; anxiety; personality disorder; and post-traumatic stress disorder (PTSD).

Tr. 725.  At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 725.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> She can stand and/or walk for two hours during an eight-hour workday; can sit for six hours during an eight-hour workday; can occasionally balance, stoop, and kneel; can never crawl or climb ladders, ropes or scaffolds; can never work in extreme cold or heat or under direct sunlight; can tolerate occasional exposure to fumes, gases, odors, dusts, poor ventilation, and other pulmonary irritants; can never work at unprotected heights or around moving mechanical parts or heavy machinery; can never work around open flames or open bodies of water; can tolerate moderate noise; can never operate a motor vehicle; can understand, remember and carry out simple, routine and repetitive tasks requiring no more than one, two or three-step instructions and involving only simple work-related decisions and occasional decision-making and changes in the work setting; can tolerate occasional interaction with supervisors, co-workers and the public, but interaction with co-workers and the public is brief, superficial and incidental to the work performed.

Tr. 728.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 738.   At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform such as routing clerk, marker, and electrical accessories assembler.  Tr. 738-39.

Thus, the ALJ found that Plaintiff has not been disabled, as defined in the Social Security Act, since May 1, 2018, the date the application was filed.  Tr. 739.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 9.  Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

2.    Whether the ALJ properly considered the medical opinions, ECF No. 8 at 2.

**DISCUSSION**

**A.    Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting

1   *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*,

2   278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility

3   determination with findings sufficiently specific to permit the court to conclude that

4   the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and

5   convincing [evidence] standard is the most demanding required in Social Security

6   cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

7   *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

8       In assessing a claimant's symptom complaints, the ALJ may consider, *inter*

9   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

10   claimant's testimony or between her testimony and her conduct; (3) the claimant's

11   daily living activities; (4) the claimant's work record; and (5) testimony from

12   physicians or third parties concerning the nature, severity, and effect of the

13   claimant's condition. *Thomas*, 278 F.3d at 958-59.

14       The ALJ's decision must contain specific reasons for the weight given to the

15   claimant's symptoms and be consistent with and supported by the evidence, which

16   must be clearly articulated so the individual and any subsequent reviewer can assess

17   how the adjudicator evaluated the individual's symptoms.  Social Security Ruling

18   (SSR) 16-3p, 2016 WL 1119029, at *9.  The ALJ "must specifically identify the

19   testimony she or he finds not to be credible and must explain what evidence

20   undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

21   2001).  While the ALJ is not required to perform a line-by-line analysis of the

ORDER - 10

claimant's testimony, the ALJ is still required to do more than offer "non-specific conclusions that [claimant's] testimony was inconsistent with her medical treatment." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

First, the ALJ found that the objective evidence is inconsistent with the level of limitation alleged by Plaintiff. Tr. 729-30. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Regarding Plaintiff's spinal issues, the ALJ found that the treatment record documented some tenderness of the spine and right sacroiliac joint, decreased range of motion, and decreased reflexes in the lower extremities, but otherwise physical exam findings are generally unremarkable. Tr. 730 (citing e.g., Tr. 362, 365, 367-68, 370, 373, 407, 417, 425, 522-23, 527, 531, 539-40, 1197-98, etc.). Plaintiff argues the objective medical evidence cannot be the sole basis for rejecting her symptom testimony. ECF No. 8 at 7. As discussed herein, the ALJ supplied

1  multiple clear and convincing reasons supported by substantial evidence in addition

2  to the objective medical evidence.

3      The ALJ also noted that x-ray and MRI imaging showed no more than mild

4  abnormalities.  Tr. 730 (citing Tr. 375, 444, 1030, 1195, 1202, 1253).  Plaintiff

5  contends the ALJ ignored the impact of Plaintiff's obesity.  ECF No. 8 at 22 (citing

6  SSR 19-2p).  However, Plaintiff is incorrect because in addition to finding obesity is

7  a severe impairment at step two, the ALJ considered obesity at step three, including

8  whether obesity alone or in combination with another impairment or impairments

9  medically equals a listing.  Tr. 726.  In evaluating Plaintiff's RFC, the ALJ noted

10  Plaintiff's BMI throughout the record and that Plaintiff considered bariatric surgery.

11  Tr. 731.  The ALJ observed that nothing in the record indicates that obesity would

12  prevent her from performing work with the limitations included in the RFC.  Tr.

13  731.  Thus, the ALJ reasonably considered obesity under Social Security Ruling 19-

14  2p, 2019 WL 2374244, at *4 (effective May 20, 2019).

15      The ALJ further noted that when Plaintiff was seen for other issues, she

16  denied back pain or muscle weakness.  Tr. 730 (citing Tr. 999).  Plaintiff argues that

17  a cardiologist's lack of findings regarding back pain should not be considered

18  because according to *Diedrich v. Berryhill*, it is not unusual for a doctor to no

19  inquire or comment about symptoms outside his specialty.  ECF No. 8 at 8; 874 F.3d

20  634, 641 (9th Cir. 2017).  However, the note referenced by the ALJ is not silent

21  about back pain, it indicates that in March 2021, Plaintiff reported "no back pain"

1    during the review of symptoms.  Tr. 999.  It was reasonable for the ALJ to take the

2    specific reference to "no back pain" at face value.

3        Second, the ALJ found that Plaintiff has received only conservative treatment

4    for her spinal pain.  Tr. 730.  The type, dosage, effectiveness and side effects of

5    medication taken to alleviate pain or other symptoms as well is a relevant factor in

6    evaluating the intensity and persistence of symptoms.  20 C.F.R. § 416.929(c)(3).

7    Evidence of conservative treatment is sufficient to discount a claimant's testimony

8    regarding severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

9    2007); *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995).  The ALJ observed

10   that Plaintiff has received only medication and physical therapy, and that physical

11   therapy notes indicate Plaintiff was initially engaged but was unwilling to stick with

12   the program long enough to notice significant improvement.  Tr. 730, 1002.

13   Plaintiff argues her testimony should not be discounted because she does not have an

14   abnormality that could be surgically addressed.  ECF No. 8 at 8-9.  However,

15   Plaintiff cites no evidence that surgery was considered and ruled out or is otherwise

16   unavailable for her back condition.  The ALJ's finding was reasonable and based on

17   substantial evidence.

18        Third, regarding Plaintiff's migraines/headaches, the ALJ found some

19   inconsistencies in the record.  Tr. 730.  The ALJ evaluates a claimant's statements

20   for their consistency, both internally and with other information in the case record.

21   SSR 16-3p, at *5.  The ALJ noted that Plaintiff reported having migraines for ten

years, but that she worked during part of the time, suggesting that migraines are not

as limiting as described. Tr. 730 (citing Tr. 1030). However, during the ten years

before the ALJ's decision, Plaintiff had earnings of $1,078 in 2017 and $3,105 in

2018, and no earning in any other year. Tr. 147-51. As Plaintiff observes, the ALJ

made a finding that the 2018 earnings are "minimal" and "not indicative of

substantial gainful activity." Tr. 725; ECF No. 8 at 9. It is unclear how this minimal

work activity implies the ability to work despite her migraines. This portion of the

ALJ's finding is not supported by substantial evidence.

The ALJ also observed that while Plaintiff said her migraines caused memory

problems, no memory problems are documented in the record. Tr. 730-31

(numerous citations). Memory assessments in the records cited by the ALJ all

indicate that Plaintiff's memory was intact. Tr. 362, 365, 367, 370, 373, 522, 527,

531, 1031, 1037, 1061. Plaintiff does not cite any records contradicting this

conclusion. ECF No. 8 at 9-10. The ALJ's finding is supported by substantial

evidence.

The ALJ also noted that treatment record indicates that Plaintiff's migraines

had improved with treatment. Tr. 731. The effectiveness of treatment is a relevant

factor in determining the severity of a claimant's symptoms. 20 C.F.R. §

416.929(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006) (determining that conditions effectively controlled with medication are not

disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*,

ORDER - 14

533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ noted that Plaintiff reported Topiramate was helping and that she only had one or two headaches per month of short duration. Tr. 731, 1030, 1196. Plaintiff acknowledges that medication reduced her headaches from 15 or more days per month but argues that even one migraine per month prevents her from sustaining work per the vocational expert's testimony. ECF No. 8 at 10 (citing Tr. 56); *see* Tr. 781. Plaintiff testified that she continues to have migraines twice a month for two to three days despite taking Topamax. Tr. 774. However, as the ALJ and Defendant observe, this is not consistent with treatment notes in August 2018 (Topiramate helping, 1-2 mild headaches a month of short duration) and January 2023 ("[m]igraines well managed" on Topamax). Tr. 1030-31. When she stopped Topiramate, she had more headaches. Tr. 1030-31. The ALJ's finding is based on a reasonable interpretation of the record and is supported by substantial evidence.

Fourth, regarding Plaintiff's pseudo-seizures, the ALJ noted that there are no objective findings of seizure-like activity, resulting in the diagnosis of pseudo-seizures. Tr. 731 (citing Tr. 686, 1000-01, 1019, 1094). Plaintiff indicated her seizure-like episode may be related to stress. Tr. 1002. Treating providers have advised that Plaintiff's seizures are not epileptic but psychogenic in nature, so seizure medication will not be beneficial, and Plaintiff was advised to continue mental health treatment. Tr. 731 (citing Tr. 1307-09, 1312, 1314, 1327, 1332, 1339-

40, 1345). The ALJ also noted that Plaintiff stutters but does not lose consciousness during an episode. Tr. 731 (citing Tr. 1030).

Plaintiff argues the ALJ incorrectly focused on a lack of objective findings regarding epilepsy, and that her nonepileptic seizures "manifest physically in ways that would interfere with her ability to perform in the workplace." ECF No. 8 at 11. She notes testimony that when the seizures started, she was having 15 episodes per day, but with medication that number has been reduced. ECF No. 8 at 11 (citing Tr. 48). However, Plaintiff does not identify, nor does the court discern, any specific functional limitations related to pseudo-seizures which are supported by the record and not accounted for in the RFC.

Sixth, regarding Plaintiff's mental health issues, the ALJ found that Plaintiff has been treated with medication and therapy and progress notes reflect some ongoing symptoms and some abnormal findings such as fluctuations of mood and affect and occasional reports of hallucinations. Tr. 731. Overall, however, the ALJ noted that mental status examinations have generally been benign and Plaintiff has presented as stable. Tr. 731 (citing e.g., Tr. 236, 356, 362, 365, 367, 370, 373, 407, 409-10, 522, 527, 531, 539-40, 541-42, 585-86, 593, 608, 610, 995, 1031, 1061, 1197, etc.). Plaintiff cites other mental status exam findings of anxious or dysphoric mood, poor attention span, poor concentration, distractible, hopeless, racing thoughts, worthlessness, helplessness, pressured speech, hyperverbal, and/or flight of ideas. ECF No. 8 at 22 (citing Tr. 392, 1390-91, 1405, 1417, 1428, 1437, 1464-

65, 1482, 1492, 1506-07).  However, the ALJ observed that mental health records,

reflect concerns over situational stressors such as finances, housing, and stressful

interactions with others, rather than specific mental health issues.[3]  Tr. 731-32

(citing Tr. 1386-1581; *infra*).

---

[3] *See* e.g., *Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (concluding

symptom testimony properly rejected in part because "the record support[ed] the

ALJ's conclusion that [plaintiff's] mental health symptoms were situational");

*Kimberlee L. v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-00236-MKD, 2019 WL

2251824, at *9 (E.D. Wash. May 9, 2019), *report and recommendation adopted sub

nom. Kimberlee Anne L. v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-236-RMP,

2019 WL 2250279 (E.D. Wash. May 24, 2019) (affirming ALJ's finding that many

of claimant's most symptomatic periods were due to situational stressors as a

reasonable interpretation of the record, and thus a reason to discount the alleged

severity of her symptoms); *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-

CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (determining

"situational stressors" was a valid reason for discounting claimant's testimony when

evidence supported the finding); *Rys v. Berryhill*, No. CV 16-8391-JPR, 2018 WL

507207, at *15 (C.D. Cal. Jan. 19, 2018) (affirming ALJ's finding that claimant's

depression was situational based on evidence in the record).

Plaintiff asserts the ALJ's finding regarding situational stressors is not supported because Plaintiff was attending a cognitive behavioral therapy group. ECF No. 8 at 22 (citing Tr. 1568-81). Plaintiff's argument is unclear, and the notes from group therapy cited by Plaintiff do not shed any light on the argument. The records are not detailed but include a few comments such as Plaintiff "presented in a neutral mood with a congruent affect" or "neutral mood with pleasant affect" (Tr. 1568, 1573, 1574, 1577), encouraged others (Tr. 1568), engaged in discussion (Tr. 1573), and is taking steps toward increasing functionality (Tr. 1574). It is not apparent that these records contradict the ALJ's finding. Additionally, the group therapy record includes a note consistent with the ALJ's finding indicating that Plaintiff reported she "was getting something out of [the depression group] but had a lot going on at home right now which was distracting to her." Tr. 1581. Other records cited by the ALJ support this finding. Tr. 731-32; *see* e.g., Tr. 1396, 1452 ("She and her family members do not get along and they are the source of much of her distress."); 1463 ("Not happy with her partner as he has dependence to ethanol."); 1528, 1532, 1535 (problems with neighbors), 1544 (disappointed with roommate); 1553 (had a challenge dealing with poor parenting of a family member). The ALJ's finding is supported by substantial evidence.

Seventh, the ALJ found that Plaintiff has engaged in activities which suggest she is not as limited as alleged. Tr. 732. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a

claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ observed that Plaintiff reported living with her five children ages eight to fifteen and takes care of them on her own. Tr. 732, 1399, 1404. The ALJ found that Plaintiff shops, prepares meals, does activities with her children, helps with their schoolwork, and stays in touch with their teachers. Tr. 732, 771-73. She also reported doing some childcare work for others and taking care of her nephew. Tr. 1070, 1352, 1537. Plaintiff argues the ALJ's finding is not specific enough and that none of the activities cited by the ALJ are inconsistent with her testimony regarding limitations. ECF No. 8 at 13. The ALJ cited activities requiring Plaintiff to leave the house, yet Plaintiff testified "my anxiety generally won't let me leave the house." Tr. 767. Furthermore, the ALJ found that Plaintiff's ability to care for her own children, her nephew, and other children indicates a capacity to perform a

range of tasks on a consistent basis, suggesting she is not as incapacitated as described.  Tr. 732.

Plaintiff also argues that the children were old enough to do most tasks themselves and that Plaintiff stopped caring for her sister's baby due to limitations. ECF No. 8 at 13-14.  Even so, the ALJ acknowledged that Plaintiff's ability to engage in these activities does not necessarily correlate to the ability to obtain and maintain full-time work, but these activities suggest that Plaintiff is not as limited as described.  Tr. 732; *see Molina* at *id.*  Regardless, the ALJ cited other specific, clear and convincing reasons for giving less weight to Plaintiff's symptom testimony, so any error in considering Plaintiff's daily activities would be harmless.  *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008).

**B.    Medical Opinions**

For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 416.920c(a) and (b).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were

considered.  20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. § 416.920c(b)(2); *see* 20 C.F.R. § 416.920c(c)(1)-(5).

In evaluating supportability, the more relevant the objective medical evidence and supporting explanations provided by a medical source to support his or her opinion, the more persuasive the medical opinion will be.  20 C.F.R. § 416.920c(c)(1)-(2).  In evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.  20 C.F.R. § 416.920c(c)(1)-(2).

### 1. Lauren Hohman, PA-C

Ms. Hohman provided opinions regarding Plaintiff's limitations in January 2018 (Tr. 1233), June 2018 (Tr. 1120-23, 1129), May 2021 (Tr. 1191-93), June 2022 (Tr. 1259-61), and August 2022 (Tr. 1263-65).  The ALJ found Ms. Hohman's January 2018 and August 2022 opinions are "consistent with the record as a whole" and therefore persuasive, but the June 2018, May 2021, and June 2022 opinions are not persuasive.  Tr. 735-36.  Plaintiff challenges the ALJ's consideration of the three unpersuasive opinions.  ECF No. 10 at 10-11.

In June 2018, Ms. Hohman completed a DSHS WorkFirst form for documentation of a medical or disability condition.  Tr. 1220-23, 1229.  She indicated diagnoses of chronic low back pain and multiple mental health problems

(but noted that mental health problems were not addressed in the opinion).  Tr. 1220.

Ms. Hohman opined that Plaintiff was limited to lifting no more than ten pounds;

should not bend at the waist, push, pull, kneel, or squat; should not sit more than 1-2

hours at a time; no prolonged standing; and no more than 1-10 hours of work per

week.  Tr. 1220.  She recommended another trial of physical therapy.  Tr. 1221.

In May 2021, Ms. Hohman completed another DSHS WorkFirst form and

indicated diagnoses of chronic low back pain, left knee pain, pseudoseizures, and

anxiety.  Tr. 1191. She opined that Plaintiff was limited in the ability to lift heavy

objects and was not able to work.  Tr. 1191.  She also opined that Plaintiff is limited

to light work.  Tr. 1192.  Ms. Hohman recommended that Plaintiff continue mental

health therapy and noted that Plaintiff declined to follow up with a pain specialist.

Tr. 1192.

In June 2022, Ms. Hohman completed a third DSHS WorkFirst form and

indicated diagnoses of chronic low back pain, bilateral knee pain, pseudoseizures,

and anxiety.  Tr. 1259-61.  She opined that Plaintiff is unable to stand for more than

10 minutes; has difficulty/painful to bend over; unable to lift more than 15 pounds;

pseudoseizures cause lapses in consciousness resulting in inability to focus or

respond; and Plaintiff is unable to work.  Tr. 1259.  She also opined Plaintiff is

limited to sedentary work.  Tr. 1260.  Ms. Hohman recommended continued mental

health counseling, indicated Plaintiff said physical therapy "didn't work out,"

initiated referral to orthopedics for knees, and noted Plaintiff declined to follow up with a pain specialist.  Tr. 1260.

Regarding supportability, the ALJ found that Ms. Hohman did not provide a sufficient explanation with references to objective findings to support the limitations assessed. Tr. 734-35.  Specifically, the ALJ observed that Ms. Hohman's opinions that Plaintiff can work zero hours and would need to lie down for three to four hours per day do not correlate with her own findings or observations.

Regarding consistency, the ALJ found that the limitations assessed by Ms. Hohman are not consistent with the record as a whole.  Tr. 735.  For example, the ALJ noted that the limitations assessed by Ms. Hohman are not consistent with Plaintiff's report that she is very busy taking care of her children, other children, shopping, taking care of her home, preparing meals, and attending appointments. Tr. 735.  The ALJ acknowledged that while these activities do not necessarily correlate to the ability to work full-time, they indicate the capacity to perform work-like tasks for more than zero hours per week.

Plaintiff argues generally that Ms. Hohman's opinions are consistent with Plaintiff's interpretation of the record.  ECF No. 8 at 16-17.  As discussed *supra*, the ALJ's interpretation of the record overall is reasonable and supported by substantial evidence.  There is no error.

2.  *Tasmyn Bowes, Psy.D.*

1    In August 2018, Dr. Bowes examined Plaintiff and completed a DSHS

2    Psychological/Psychiatric Evaluation form.  Tr. 1292-97.  Dr. Bowes diagnosed

3    borderline personality disorder, PTSD, unspecified psychotic disorder, meth use

4    disorder, and heroin use disorder.  Tr. 1295.  She assessed severe limitations in three

5    functional areas and marked limitations in three functional areas, and an overall

6    severity rating of marked.  Tr. 1295-96.

7    The ALJ found Dr. Bowes' opinion unpersuasive.  Tr. 735.  With regard to

8    supportability, the ALJ found Dr. Bowes' opinion is not supported by her own exam

9    notes or narrative explanation.  Tr. 735.  The ALJ observed that Ms. Bowes

10   examination did not reveal any significant abnormalities and noted the following

11   mental status exam results: grooming ok, eye contact adequate; speech normal, well

12   maintained and organized; attitude cooperative, open, honest; mood euthymic; affect

13   appropriate and congruent; thought process, orientation, memory, concentration,

14   abstract thought, and insight and judgment all within normal limits.  Tr. 735, 1296-

15   97.  The ALJ found that in light of these findings, the basis for Dr. Bowes'

16   assessment of marked and severe limitations is unclear.  Tr. 735.  The ALJ

17   concluded that Dr. Bowes must have relied on Plaintiff's subjective report of

18   symptoms, and since Plaintiff's symptoms statements are not fully supported, the

19   opinion is not well supported.

20   Plaintiff argues the ALJ erred by finding Dr. Bowes relied on her self-report

21   since Dr. Bowed considered a clinical interview and mental status exam.  ECF No. 8

ORDER - 24

at 18.  However, the ALJ reasonably considered the opinion as a whole, including specifically noting findings from the mental status exam.  Tr. 735.  Plaintiff has not demonstrated the ALJ erred in considering Dr. Bowes' opinion.

Regarding consistency, the ALJ found Dr. Bowes' opinion is not consistent with the record as a whole.  Tr. 735.  The ALJ referenced previously discussed findings throughout the record of unremarkable mental status exams, focus on situational stressors during therapy, and Plaintiff's ability to engage in a range of daily activities.  Tr. 735.  The ALJ observed that nothing in Dr. Bowes' report or the record as a whole suggests the marked and severe limitations assessed.  Tr. 735-36.

Plaintiff argues generally that Dr. Bowes' opinion is consistent with Plaintiff's interpretation of the record.  ECF No. 8 at 18-19.  As discussed *supra*, the ALJ's interpretation of the record overall is reasonable and supported by substantial evidence.  There is no error.

### 3.  Thomas Genthe, Ph.D.

In March 2020, Dr. Genthe examined Plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form.  Tr. 1283-90. Dr. Genthe diagnosed social anxiety disorder, ADHD, other schizophrenia spectrum disorder, alcohol use disorder (mild), and stimulant use disorders (methamphetamines and cocaine) in sustained remission.  Tr. 1286.  He assessed marked limitations in five functional areas and an overall severity rating of marked.  Tr. 1287.

In March 2021, Dr. Genthe examined Plaintiff and completed a second DSHS evaluation form.  Tr. 1267-73.  Dr. Genthe diagnosed PTSD, and substance use disorders (cannabis, meth, and heroin) in sustained remission.  Tr. 1270.  He assessed marked limitations in nine functional areas and an overall severity rating of marked.  Tr. 1271.

The ALJ found Dr. Genthe's opinions are not persuasive.  With regard to supportability, the ALJ found Dr. Genthe's opinion is not supported by his own exam notes or narrative explanation.  Tr. 736.  The ALJ observed that Dr. Genthe's exams did not reveal any significant abnormalities, and any abnormalities found do not correlate to the marked limitations he assessed.  Tr. 736.  The ALJ concluded that Dr. Genthe primarily relied on Plaintiff's subjective report of symptoms, and because the ALJ found Plaintiff's symptoms not fully supported, an opinion that relies on her symptom statements is not well supported.  Tr. 736.

Plaintiff argues the ALJ overlooked certain findings from the 2021 exam, including that Plaintiff provided an excessive amount of detail in response to questions; had significant impairment in recognizing and struggled to express her emotions; had difficulty with delayed recall and recalled only one of four objects after a five-minute delay; had "significant difficulties following the conversation"; and poor insight and judgment.  ECF No. 8 at 19; Tr. 1273.  While the ALJ did not specifically address these findings, the ALJ commented that no abnormalities noted correlate with the marked limitations assessed.  Tr. 736.  For example, difficulty

1    expressing emotions does not appear to correlate to any work-related functioning.

2    Despite noting difficulty following the conversation, Dr. Genthe assessed Plaintiff's

3    concentration as within normal limits.  Tr. 1273. Even if the ALJ could have been

4    more specific in addressing these findings, any error would be harmless because the

5    ALJ provided adequate specificity in addressing the consistency of the opinion.

6          Regarding consistency, the ALJ found Dr. Genthe's opinion is not consistent

7    with the record as a whole.  Tr. 736.  The ALJ referenced previously discussed

8    findings throughout the record of consistently unremarkable mental status exams,

9    focus on situational stressors during therapy, and Plaintiff's ability to engage in a

10   range of daily activities.  Tr. 735.  The ALJ observed that nothing in Dr. Genthe's

11   findings indicates Plaintiff is markedly limited in the ability to adapt to changes,

12   communicate, maintain appropriate behavior, perform activities within a schedule,

13   learn new tasks, or function reliably and consistently.  Tr. 736.  The ALJ noted, for

14   example, that Plaintiff's ability to get her children to school and activities and her

15   ability to attend appointments show she can work with a schedule reliably and

16   consistently.  Tr. 736.  The ALJ also observed that nothing in the treatment record

17   indicates Plaintiff has difficulty with communication or exhibits problematic

18   behavior, indicating that she is not markedly limited in those areas.  Tr. 737.

19         Plaintiff argues generally that Dr. Genthe's opinion is consistent with

20   Plaintiff's interpretation of the record.  ECF No. 8 at 18-20.  As discussed *supra*, the

21

ORDER - 27

ALJ's interpretation of the record overall is reasonable and supported by substantial evidence.  There is no error.

### 4.  Terri Brummet, MSW, LICSW, CMHS, DMHS

In August 2017, Ms. Brummet completed a DSHS WorkFirst form for documentation of medical or disability condition.  Tr. 292-94.  She identified diagnoses of PTSD and major depressive disorder and noted that Plaintiff reported difficulty concentrating, isolating behaviors, low motivation, negative self-talk, hypervigilance, suicidal ideation, and struggles with being in public for extended periods of time.  Tr. 292.  Ms. Brummet opined Plaintiff should be limited to 1-10 hours of work per week.  Tr. 292.

In January 2018, Ms. Brummet completed a second WorkFirst form and identified the same diagnoses.  Tr. 287-89.  She noted that Plaintiff struggles with lack of motivation, uncontrolled worry and fear of what others think, and that she would rather avoid than engage in any confrontation.  Tr. 287.  Ms. Brummet opined Plaintiff should be limited to 11-20 hours of work per week.  Tr. 292.

In June 2018, Ms. Brummet completed a third WorkFirst form and identified the same diagnoses and indicated Plaintiff "struggles with social interactions and personalizing the behavior of others."  Tr. 326-28.  Ms. Brummet opined that Plaintiff is limited to 1-10 hours of work per week.  Tr. 326.

The ALJ found Ms. Brummet's opinions unpersuasive.  Tr. 737.  With regard to supportability and consistency, the ALJ found that Ms. Brummet did not provide

sufficient support for her conclusions that Plaintiff cannot work more than 1-10 or

11-20 hours per week. Tr. 737. The ALJ observed that the difficulties identified by

Ms. Brummet are not well-documented in the record and do not correlate with an

inability to work full-time. Tr. 737. For example, the ALJ noted previously

discussed evidence indicated that Plaintiff's concentration is regularly described as

intact, which counters Ms. Brummet's statement that Plaintiff has difficulty

concentrating. Tr. 737. The ALJ noted the record indicates that Plaintiff leaves her

house daily or almost daily for various reasons, which counters Ms. Brummet's

statement that Plaintiff isolates cannot function in public. Tr. 737. Furthermore, to

the extent Ms. Brummet's statements are supported in the record, such as low

motivation and negative self-image, the ALJ observed that there is no evidence these

issues would prevent Plaintiff from working. Thus, the ALJ found that Ms.

Brummet's opinions are not well-supported or consistent with the record.

Additionally, the ALJ noted that the RFC includes limitations in concentration and

social interactions, so to the extent that Ms. Brummet's opinions are consistent with

the record as a whole, they are accounted for in the RFC finding.

    Plaintiff argues that the ALJ's concentration finding is not supported by the

record, ECF No. 8 at 21, but the records cited were addressed by the ALJ who noted

the negative mental status exam findings were impacted by situational stressors.

*Supra.* Plaintiff also contends that brief school runs or trips to the grocery store do

not negate Ms. Brummet's note that Plaintiff has difficulty in public settings for an

"extended period of time." ECF No. 8 at 21 (citing Tr. 292). Even so, as the ALJ noted, the RFC contains a limitation to occasional interaction with supervisors, co-workers, and the public, but interaction with co-workers and the public is further limited to brief, superficial, and incidental to the work performed. Tr. 728. Thus, any difficulty in public settings for an extended period is reasonably accounted for the RFC and there is no error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

1. Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

2. Defendant's Brief, **ECF No. 10**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** January 29, 2025.

LONNY R. SUKO
Senior United States District Judge

ORDER - 30